1   MELISSA MEEKER HARNETT (Bar No. 164309)
        mharnett@wccelaw.com
2   GREGORY B. SCARLETT (Bar No. 131486)
        gscarlett@wccelaw.com
3   WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
    5567 Reseda Boulevard, Suite 330
4   Post Office Box 7033
    Tarzana, California 91357-7033
5   Telephone: (818) 705-6800 • (323) 872-0995
    Facsimile: (818) 345-0162
6
    Attorneys for Plaintiff, STEPHEN J.
7   RUSH, individually and on behalf of all
    others similarly situated
8

ORIGINAL FILED

E-filing

MAR - 2 2012

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9               UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

| | |
|---|---|
| 11  STEPHEN J. RUSH, individually and on behalf of all others similarly situated, | **CASE NO.** C 12 1060 LB |
| 12 | |
| 13                     Plaintiffs, | **PUTATIVE CLASS ACTION** |
| 14         vs. | **COMPLAINT FOR:** |
| 15  NUTREX RESEARCH, INC., a Florida corporation; JEFFREY A. MCCARRELL, an individual; JENS O. INGEHOHL, in individual, and DOES 1-50, inclusive, | **1) VIOLATIONS OF CONSUMERS LEGAL REMEDIES ACT;** |
| 16 | **2) VIOLATIONS OF CONSUMERS LEGAL REMEDIES ACT (INJUNCTIVE RELIEF ONLY);** |
| 17 | |
| 18                     Defendants. | **3) VIOLATIONS OF UNFAIR COMPETITION ACT (UNFAIR AND FRAUDULENT CONDUCT);** |
| 19 | |
| 20 | **4) VIOLATIONS OF UNFAIR COMPETITION ACT (UNLAWFUL CONDUCT);** |
| 21 | |
| 22 | **5) FALSE AND MISLEADING ADVERTISING;** |
| 23 | |
| 24 | **6) BREACH OF IMPLIED WARRANTY;** |
| 25 | **7) BREACH OF EXPRESS WARRANTY;** |
| 26 | |
| 27 | **8) UNJUST ENRICHMENT** |
| 28 | **DEMAND FOR JURY TRIAL** |

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

## **INTRODUCTION**

1.    Defendant Nutrex Research, Inc. ("Nutrex") is a company which manufactures, distributes, markets, and sells a variety of purported "pre-workout" and "fat burning" dietary supplements to consumers.  Some of Nutrex's best-selling products include: (1) "Hemo Rage Black" and "Hemo Rage Black Ultra Concentrate"; (2) "Lipo 6 Black" and "Lipo 6 Black Ultra Concentrate;" and (3) "Lipo 6 Black Hers" and "Lipo 6 Black Hers Ultra-Concentrate" (collectively, the "Products").  These Products are purported dietary supplements which are marketed for use as pre-workout and weight management supplements. Hemo Rage Black is marketed as a "pre-workout" bodybuilding supplement.  Lipo 6 Black and Lipo 6 Black Hers are marketed as "fat destroyer" weight management supplements. However, the Products contain a dangerous stimulant that poses a serious health risk and has potentially life-threatening side effects.  The stimulant, which is supposedly derived from the oil of the geranium plant, is known by many names, including "1, 3 dimethylamylamine," "methylhexanamine," and "geranamine" (hereinafter collectively referred to as "DMAA").

2.    Plaintiff Stephen J. Rush ("Plaintiff") purchased Nutrex's Products in reliance on the company's claims that the Products are safe, effective and legal dietary supplements, which the Products are not.

3.    DMAA was patented by Eli Lilly & Company in 1944 and later marketed as a drug, beginning in 1971, under the trademark "Forthane" for use as a nasal decongestant and as a treatment for hypertrophied or hyperplasic oral tissues. DMAA is a vasoconstrictor and central nervous system stimulant which is on the World Anti-Doping Agency ("WADA") and Major League Baseball ("MLB") lists of banned substances.  DMAA is totally banned in Canada and New Zealand. Recently, DMAA has gained popularity with young people as a designer drug used in "party pills."

///

1017590.1

2
COMPLAINT

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

4.    Nutrex fails to inform consumers that DMAA is a dangerous central nervous system stimulant which is banned by WADA, MLB, Canada and New Zealand, and that using the Products can cause consumers to test positive for an illegal substance and/or amphetamine use.

5.    In addition, though DMAA is claimed to be an extract of geranium oil, most of the DMAA contained in products currently on the market is wholly "synthetic" DMAA, completely manufactured in laboratories, and is not derived from the geranium plant in any way whatsoever.  In fact, Plaintiff is informed and believe and on that basis allege that the DMAA in Nutrex's Products is purely synthetic.  Significantly, recent studies have also concluded that there is no DMAA in geranium oil at all, that DMAA  cannot be extracted from geranium oil, and that all DMAA on the market is synthetic.

6.    Because DMAA is a wholly synthetic substance, it is not a "dietary ingredient," and Nutrex's Products are therefore not "dietary supplements," as those terms are defined by the federal Food, Drug & Cosmetic Act ("FDCA"), and implementing rules and regulations adopted by the U. S. Food & Drug Administration ("FDA") – all of which are expressly incorporated into California's Sherman Food, Drug, & Cosmetic Act (the "Sherman Law"), *Health & Safety Code* ("H&S") §§ 108975-111915.

7.    California's Sherman Law expressly incorporates all food labeling requirements set forth in the FDCA (*see* Cal. H&S Code § 110100(a)), and further provides that any food is misbranded if its nutrition labeling does not conform to FDCA requirements (*see* Cal. H&S Code §§ 110665, 110670, 110673).

8.    Furthermore, because DMAA was previously patented and marketed by Ely Lilly as a "drug" for the treatment of various medical conditions and disorders, it cannot now be considered a dietary ingredient which can be properly included in a dietary supplement.

*///*

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

9.     Nevertheless, the Products are falsely advertised by Nutrex as safe, natural dietary supplements.  Nutrex fails to inform consumers that the Products do not meet the definition of a "dietary supplement," and that DMAA does not meet the definition of a "dietary ingredient," as those terms have been defined and adopted by California's Sherman Law.

10.     Recently, the FDA issued warnings about over-the-counter sales of various fraudulent and dangerous dietary supplements promoted mainly for bodybuilding and weight loss, as is the case here.  (*See* Ex. 1, "Tainted Products Marketed as Dietary Supplements;" *see also* Ex. 2, "Beware of Fraudulent Dietary Supplements.")  The FDA notes that such products often "contain hidden or deceptively labeled ingredients," such as active ingredients contained in drugs required to be approved by the FDA prior to marketing, or other compounds that do not qualify as dietary ingredients.  (Ex. 2, p. 1.)

11.     Not content to deceptively market the Products, which contain an unsafe synthetic stimulant, as natural dietary supplements, Nutrex goes a step further in its marketing scheme by making false, misleading, and unsubstantiated claims regarding the safety and effectiveness of the Products -- claims that Nutrex knows are completely without merit or scientific substantiation -- in order to lure unsuspecting consumers into buying these so called "dietary supplements."

12.     Accordingly, Plaintiff brings this lawsuit, on behalf of himself and a putative class of California purchasers of the Products, to enjoin Nutrex, Jeffrey McCarrell, Jens Ingenohl and Does 1-50 (collectively "Defendants") from selling the Products without informing consumers that DMAA is a potentially dangerous, synthetic, banned stimulant, and from making illegal and deceptive marketing claims regarding the effectiveness and safety of the Products.  Plaintiff further seeks to recover restitution from Defendants in the amount of the total funds expended by Plaintiff to purchase the Products, and by a class of all consumers in California who purchased the Products within four (4) prior to the filing of this Complaint through

1 the present.

2    13.   In the course of manufacturing, labeling, marketing, distributing, and

3 selling the Products, Defendants, individually and acting as agents, employees,

4 servants or alter egos of each other, have committed and continue to commit the

5 above alleged illicit business practices in direct violation of California's Consumer

6 Legal Remedies Act ("CLRA"), *Civil Code* ("CC") §§ 1750-1784, Unfair

7 Competition Act ("UCL"), *Business & Professions Code* ("B&P") § 17200 et seq.,

8 False Advertising Law ("FAL"), B&P Code § 17500-17536, Sherman Law, and

9 warranty laws.

10    14.   Furthermore, Defendants, individually and acting as agents, servants or

11 employees of Nutrex, have "misbranded" the Products as "dietary supplements." A

12 product is "misbranded" if its labeling is "false or misleading in any particular."

13 H&S Code §§ 110660 & 111330. "In determining whether the labeling or

14 advertisement of a food, drug, device, or cosmetic is misleading, all representations

15 made or suggested by statement, word, design, device, sound, or any combination of

16 these, shall be taken into account. The extent that the labeling or advertising fails to

17 reveal facts concerning the food, drug, device, or cosmetic, or consequences of

18 customary use of the food, drug, device, or cosmetic, shall also be considered." *Id.*

19 § 110290 (emphasis added). It is a violation of the Sherman Law for any person to

20 (1) misbrand any food or drug (*Id.* §§ 110398 & 111445), (2) manufacture, sell,

21 deliver, hold, or offer for sale any food or drug that is misbranded (*Id.* §§ 110398 &

22 111440), or (3) receive in commerce any food or drug that is misbranded, or deliver

23 or proffer it for delivery (*Id.* §§ 110770 & 111450). Defendants' violations of the

24 UCL, FAL and CLRA are the equivalent of "misbranding" under the Sherman Law.

25    15.   Defendants, individually and acting as agents, servants or employees of ,

26 further fail to honor their warranty obligations by providing Products that: (1) fail to

27 pass without objection in the trade under the description provided; (2) are not fit for

28 the ordinary purpose for which such goods are used; (3) are not fit for the particular

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   purpose for which the Products were sold (4) are not adequately contained,

2   packaged, and labeled; (5) do not conform to the promises or affirmations of fact

3   made on the containers and/or labels; and/or (6) violates the warranties contained in

4   California *Uniform Commercial Code* ("UCC") §§ 2313, 2314, and 2315.

5                              **THE PARTIES**

6        16.   Plaintiff Stephen J. Rush is a citizen of the state of California and a

7   resident of Los Angeles County, California who, in and around June, 2011,

8   purchased Hemo Rage Black Ultra Concentrate, and also purchased Lipo 6 Black

9   Hers Ultra Concentrate for his girlfriend, Brittany L. Cobb.

10       17.   Plaintiff is informed and believes that Nutrex is a Florida corporation

11  doing business in the state of California.  Nutrex's principal place of business and

12  corporate headquarters are located at 5707 Dot Com Court, Suite 1001, Oviedo,

13  Florida 32765.

14       18.   Plaintiff is informed and believes that Jeffrey McCarrell ("McCarrell")

15  is an individual residing in, and a citizen of, the state of Florida, that McCarrell is an

16  officer, managing agent and/or controlling principal of Nutrex, and that McCarrell

17  directly controls, supervises, manages and participates in the activities of Nutrex,

18  including but not limited to the wrongful conduct herein alleged.

19       19.   Plaintiff is informed and believes that Jens Ingenohl ("Ingenohl") is an

20  individual residing in, and a citizen of, the state of Florida, that Ingenohl is an

21  officer, managing agent and/or controlling principal of Nutrex, and that Ingenohl

22  directly controls, supervises, manages and participates in the activities of Nutrex,

23  including but not limited to the wrongful conduct herein alleged.

24       20.   Plaintiff does not know the true names or capacities of the persons or

25  entities sued herein as Does 1 through 50, inclusive, and therefore sues such

26  Defendants by said fictitious names.  Plaintiff is informed and believes, and based

27  thereon alleges, that each of the Doe Defendants is in some manner legally

28  responsible for the damages suffered by Plaintiff and the members of the putative

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  class as alleged herein.  Plaintiff will further amend this Complaint to set forth the

2  true names and capacities of these Defendants when they have been ascertained,

3  along with appropriate charging allegations, as may be necessary.

4       21.   Plaintiff is informed and believes and thereon alleges that at all times

5  herein mentioned, there existed a unity of interest and ownership between and

6  among the Defendants such that any individuality and separateness between and

7  among them have ceased to exist such that each Defendant is the alter ego of each of

8  the other Defendants, and they should not be allowed to evade justice by asserting

9  the corporate or other limited liability veil.  Plaintiff is further informed and believes

10  that Nutrex is undercapitalized and that Defendants McCarrell and Ingenohl

11  consistently engage in a practice and policy of ignoring corporate formalities and

12  conventions with respect to Nutrex, commingling the finances, assets and bank

13  accounts of Nutrex with their own personal finances, assets and bank accounts, and

14  treating and utilizing the funds, assets and bank accountsof Nutrex as if those funds,

15  assets and bank accounts were their own.

16       22.   Plaintiff is informed and believes and based thereon alleges that, at all

17  times relevant herein, each of the Defendants was the agent, servant, employee,

18  subsidiary, affiliate, partner, assignee, successor-in-interest, or representative of

19  each of the other Defendants, and was acting in such capacity in doing the things

20  herein alleged.

21       23.   Plaintiff is informed and believes that, at all relevant times, Defendants

22  were, and still are, aware, or should have been aware, that DMAA is a potentially

23  dangerous, synthetic stimulant banned by several athletic organizations and in

24  certain countries, that use of the Products may have serious and medically risky

25  adverse side effects, and that use of the Products does not produce the results

26  promised on the label and in internet advertising and/or cannot produce the

27  promised results without serious adverse side effects.  Nevertheless, Defendants

28  market the Products as safe and effective dietary supplements, and fail to inform

1  consumers of the true facts.

2  24.   In committing the wrongful acts alleged herein, Defendants planned and

3  directly participated in and furthered a common scheme by means of false,

4  misleading and deceptive advertising and labeling representations to induce

5  consumers to purchase the Products.

6  25.   Defendants aided and abetted and knowingly assisted each other in their

7  wrongful conduct as herein alleged.

8  ## JURISDICTION AND VENUE

9  26.   This Court has subject matter jurisdiction over this class action pursuant

10  to 28 U.S.C. § 1332 and the Class Action Fairness Act ("CAFA").  Plaintiff and

11  other members of the putative class are citizens of the state of California.  Defendant

12  Nutrex is a Florida corporation with its principal place of business in the state of

13  Florida, and the individual Defendants McCarrell and Ingenohl are citizens of the

14  state of Florida.  Plaintiff is informed and believes, and based thereon alleges, that

15  the amount in controversy in this case, exclusive of interests and costs, exceeds

16  $5,000,000.00 and the total number of class members is, at a minimum, in the

17  hundreds, if not thousands.

18  27.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(3) and (c)

19  in that Defendants do substantial business in this judicial district, have received

20  substantial benefit from doing business in this judicial district, and have knowingly

21  engaged in activities directed at consumers in this judicial district.  Furthermore, a

22  significant number of Defendants' customers are California residents, and the

23  wrongful acts alleged herein have affected members of the class throughout

24  California.  California has a significant contact or aggregation of contacts to the

25  claims at issue herein in that Defendants promote, market and sell the Products in

26  California.  Defendants are subject to personal jurisdiction anywhere in the state of

27  California, including in this judicial district.

28  28.   Each of the Defendants, individually and acting as agents, servants,

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1017590.1

COMPLAINT

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  officers, directors, employees, managers, controlling principals, shareholders and/or

2  alter egos of Nutrex, are authorized to do business in California, have sufficient

3  minimum contacts with California, and/or otherwise intentionally avail themselves

4  of the markets in California through the promotion, marketing and sale in California

5  of the Products, to render the exercise of jurisdiction by this Court permissible under

6  traditional notions of fair play and substantial justice.  In addition, the business

7  activities of Defendants at issue in this Complaint were within the flow of and

8  substantially affected interstate trade and commerce.  There has been a continuous

9  and uninterrupted flow of activities in interstate commerce throughout the class

10  period.

## FACTS COMMON TO ALL CAUSES OF ACTION

12      29.    Although Defendants have been extremely successful with the

13  marketing, sale and distribution of the Products, their success has been based on

14  false, misleading and deceptive labeling and advertising.  Nutrex sells the Products

15  through a deceptive marketing campaign claiming that they are safe, all natural

16  dietary supplements which can be used as a pre-workout "detonator" (see Ex. 3 –

17  labeling for Hemo Rage Black Ultra Concentrate and Hemo Rage Black), or as

18  weight loss "fat destroyer" products (see Ex. 4 – Lipo 6 Black Hers Ultra

19  Concentrate and Lipo 6 Black Ultra Concentrate; Ex. 5 - Lipo 6 Black and Lipo 6

20  Black Hers).

21      30.    Defendants fail to inform consumers that the Products do not meet the

22  definition of a "dietary supplement," and that DMAA does not meet the FDA's

23  definition of a "dietary ingredient," as those terms are defined and adopted by

24  California's Sherman Law.  The FDCA defines a dietary supplement as "a product

25  (other than tobacco) intended to supplement the diet" that contains one or more

26  enumerated "dietary ingredients."  See 21 U.S.C. 321(ff)(1).  The dietary ingredients

27  in such "supplements" may include a number of enumerated naturally occurring

28  substances; such as vitamins, minerals, herbs or other botanicals, amino acids, and

1  substances such as enzymes, organ tissues, glandulars, and metabolites.  Dietary

2  supplements can also be extracts or concentrates.  *Id.*  A purely synthetic substance

3  cannot be a dietary ingredient.  *See* 21 U.S.C. 321(ff)(1)(F); *see also* Ex. 6 ( FDA

4  "Draft Guidance for Industry: Dietary Ingredient Notifications and Related Issues,"

5  Section IV.D.2).

6       31.  Recent studies have shown that DMAA is not a natural constituent of the

7  geranium plant, and that all DMAA is synthetic.  *See* Ex. 7 (excerpt from Interview

8  with Ed Wyszumiala of NSF International); Ex. 8 ("AHPA: Review of Research

9  Shows DMAA Not Naturally From Geranium").  In fact, NSF International, a world

10  leader in standards development and product certification for over 65 years, and

11  widely recognized for its scientific and technical expertise in product certification,

12  has publically stated that it has tested geranium oil down to a parts per billion

13  screen, and DMAA is not derived from natural geranium oil; it is a synthetic

14  compound and not a natural constituent of the botanical geranium.  Furthermore,

15  experts in the industry have been extremely concerned that this potent stimulant

16  drug will lead to serious health issues and even death, as was the case with ephedra

17  before it was banned by the FDA in 2003.  *See* Ex. 9 ("Synthetic Geranium Still

18  Raising Industry Red Flags").

19       32.  In addition, Defendants make claims regarding the effects of the

20  Products on the human body structure and function that are essentially drug claims.

21  In other words, Defendants market the Products as safe, over-the-counter dietary

22  supplements, but ones which also affect the structure and function of the body in the

23  same manner as drugs.  Defendants fail to inform consumers that the Product

24  labeling and internet advertising make "structure/function" claims without having

25  adequate scientific substantiation to support such claims.

26       33.  For example, the labeling for Hemo Rage Black Ultra Concentrate

27  claims that use of that Product provides "**freakish blood-engorged vascularity,**

28  **tunnel-vision like mental focus and clarity, coupled with record-shattering**

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1017590.1

strength gains that will help propel your physique to new heights." *See* Ex. 3 (emphasis added). The labeling for Hemo Rage Black asserts the Product **"[i]nduces raging energy, expands blood volume, increases strength, hyper-activates pump effect, detonates fat and provides serious muscle-building compounds all in one."** *Id.* (emphasis added).

34. The labeling for Lipo 6 Black Hers Ultra Concentrate, as well as the labeling for Lipo 6 Black Ultra Concentrate, assert that those Products are **"the world's first one-pill-only fat destroyer that combines receptor cleansing and reprogramming agents with an ultra concentrated fat destroying complex. . . [And each] cleanses and reprograms receptor sites to support maximum cell-to-cell communication. . . [and] hits the fresh receptor with an ultra concentrated fat destroying complex so powerful that all you need is a single pill."** *See* Ex. 4 (emphasis added).

35. The labeling for Lipo 6 Black states the Product **"Contains the Powerful Thyroid Activator 3.5 Diiodo-L-Thyronine for Hyper-Active Fat Metabolization – Contains 3 Forms of Yohimbine for Maximum Fat-Release in Targeted Trouble Areas – Activates Brown Adipose Tissue by Stacking 3 Heat-Generating Phenylethylamines – Generates Significantly Increased Body Heat (Thermogenesis) to Melt Away Fat Depositis."** *See* Ex. 5 (emphasis added). The labeling for Lipo 6 Black Hers represents that Product has **"2 Powerful Thyronines for Hyper-Active Fat Metabolization – Contains 3 Forms of Yohimbine for Maximum Fat-Release in Targeted Areas – Activates Brown Adipose Tissue by Stacking Powerful Heat-Generating Compounds – Generates Significantly Increased Body Heat to Melt Away Fat Deposits."** *Id.* (emphasis added).

36. Thus, by their own labeling and advertising claims, Defendants characterize the Products as substances affecting the structure and/or function of the human body.

37. California's Sherman Law governs structure/function claims made for a

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

dietary supplement.  *See* Health & Safety Code § 109925(c).  The Sherman Law expressly incorporates the FDCA, and requires that such claims be made in accordance with Section 403(r)(6) of the FDCA or else the product is subject to regulation as a drug.  Under Section 403(r)(6) of the FDCA, dietary supplement labeling may include claims about the supplement's effect on the structure or function of the human body (structure/function claims) only if certain requirements are met.  *See* 21 U.S.C. 343(r)(6)(A).  One of these requirements is that the manufacturer must have substantiation that the claims are truthful and not misleading.  21 U.S.C. 343(r)(6)(B).  Plaintiff is informed and believes and on that basis alleges that Defendants do not have scientific substantiation to support the structure/function claims made by Defendants regarding the Products.

38.   The FDA has often warned manufacturers of "fat burner" products like RoxyLean that claims their products "burn fat," are "thermogenic," or "suppress appetite" are structure/function claims requiring adequate scientific substantiation (and possibly even "disease claims" which cannot be made about dietary supplements *at all*, i.e., that so-called "fat burner" products can be used to cure or treat obesity).  *See, e.g.,* Ex. 10 (FDA June 21, 2005 "Extreme Fat Burner" Warning Letter); Ex. 11 (FDA Fat Burner / Synthetic Norephedrine Warning Letters).

39.   Some of the "fat burner" products which the FDA has cited in the past for making improper structure/function claims were products which also contained synthetic stimulants, much like DMAA.   (*See* Ex. 10, *supra*: FDA determination that products containing synthetic norephedrine cannot be dietary supplements.)  Like synthetic noephedrine, synthetic DMAA is not a "dietary ingredient" as that term is defined and adopted by California's Sherman Law.

40.   Furthermore, Section 403(r)(6) of the FDCA only authorizes representations that describe the role of each nutrient or dietary ingredient intended to affect the structure or function of the body, or characterize the way in which a nutrient or dietary ingredient maintains the structure or function of the body.  Here,

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    the bodybuilding and "fat burner" structure/function claims made by Defendants

2    regarding the Products violate California law in that such claims do not describe the

3    effects of each nutrient or dietary ingredient included in the Products.  Instead,

4    Defendants' claims are made with respect to the Products as a whole, and thereby

5    constitute improper and illegal labeling claims.

6        41.   In addition, some of the Products are further misbranded under

7    California's Sherman Law because the labeling for the Products makes the

8    unauthorized nutrient content claim that the Products are "Ultra Concentrate."  The

9    labeling for these Products makes this claim even when the "Supplement Facts"

10   included on the packaging admit that most of the ingredients in the Products do not

11   have established Reference Daily Intake ("RDI") or Daily Reference Value

12   ("DRV").  Because the Sherman Law expressly incorporates the provisions of the

13   FDCA, such claims must be made in accordance with Section 403(r)(1)(A) of the

14   FDCA and the Food Labeling Regulations (21 C.F.R. 101, et seq.).  Thus, California

15   law only allows "maximum" or "high potency" or "ultra concentrate" claims to be

16   used to describe nutrients which are present at 100 per cent or greater of the RDI per

17   reference amount customarily consumed.  Thus, these Products are further

18   misbranded under California law because the labels bear the claim "Ultra

19   Concentrate" but do not indicate which ingredients are described by the claim.  Not

20   a single one of the nutrients in the "proprietary blend" for these Products is listed

21   with any indication of how much is present, let alone at "Ultra Concentrate," in a

22   serving of the Product.

23        42.   Moreover, as noted previously, DMAA was patented in 1944 by Eli

24   Lilly and Company (U.S. Patent #2,350,318) and marketed for sale as a drug under

25   the brand name Forthane for the relief of nasal congestion.  *See* Ex. 12 (Patent for

26   DMAA); Ex. 13 (Trademark information regarding Forthane); Ex. 14

27   (Advertisements by Eli Lilly for the drug Forthane).  DMAA has also been used in

28   combination with other drugs as a treatment for hypertrophied or hyperplastic oral

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   tissues. *See* Ex. 15 (Patent utilizing DMAA to treat hypertrophied gums).

2      43.   The FDCA provides that, if an article has been authorized for

3   investigation as a new drug and such investigations are made public prior to such an

4   article being sold as a dietary supplement, such an article may not be considered a

5   dietary supplement. *See* 21 U.S.C. 321(ff)(3)(B)(i)-(ii). Thus, because DMAA was

6   investigated as the drug "Forthane" prior to being marketed as a dietary ingredient,

7   and such investigations are publically available, DMAA does not fall within the

8   definition of a "dietary ingredient" as that term has been defined and adopted by

9   California's Sherman Law. Defendants fail to inform consumers that DMAA was

10   previously marketed as a drug.

11      44.   Furthermore, Plaintiff is informed and believes and based thereon

12   alleges that DMAA was not marketed as a dietary ingredient prior to October 15,

13   1994, and thus, if it is a dietary ingredient at all, it must be a "new dietary

14   ingredient" as defined by the FDCA, and by California's Sherman Law by way of

15   incorporation. The phrase "new dietary ingredient" means a dietary ingredient that

16   was not marketed in the United States before October 15, 1994. *See* 21 U.S.C.

17   350b(c). The FDCA requires that manufacturers and distributors who wish to

18   market dietary supplements that contain "new dietary ingredients" notify the FDA

19   prior to marketing products containing such ingredients. Plaintiff is further

20   informed and believes and thereon alleges that neither Defendants nor any other

21   dietary supplement manufacturer have submitted a New Dietary Ingredient

22   Application to the FDA for DMAA, and, therefore, DMAA does not meet the

23   definition of a "dietary ingredient," as that term has been defined and adopted by

24   California's Sherman Law, for this reason as well. Defendants fail to inform

25   consumers that, although DMAA is a new dietary ingredient, Defendants have failed

26   to submit a New Dietary Ingredient Application to the FDA

27      45.   Plaintiff is informed and believes that the use of DMAA can have

28   extremely dangerous side effects. Significantly, Don Caitlin, preeminent anti-

WASSERMAN, COMDEN, CASSELMAN & ESENSTEIN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  doping scientist, has noted in a Washington Post news article that DMAA has a

2  chemical structure similar to amphetamine and ephedrine, and can cause increases in

3  heart rate and blood pressure, and even death.  Caitlin further stated "this substance

4  should not be out there…it's a dangerous material." *See* Ex. 16 (Washington Post

5  Article entitled "Chemist's New Product Contains Hidden Substance").  The safety

6  concerns associated with DMAA have been well-documented, including concerns

7  that DMAA is a dangerous and addictive substance that can cause headache, nausea

8  and stroke.  *See* Ex. 17 (excerpt from article entitled "Jack3d and other MHA-

9  containing Supplements Fuel Adulteration, Safety Concerns").   To make things

10 worse, DMAA is widely used as a "designer drug" in dangerous "party pills."  *See*

11 Ex. 18 (excerpt from article entitled "New pill ingredient worries ministry").

12      46.   Despite Defendants' knowledge of the dangers associated with DMAA

13 use, they continue to advertise and sell the Products to unknowing consumers as

14 safe, natural dietary supplements.  Defendants have failed to warn consumers that

15 DMAA use can potentially cause serious adverse side effects, that DMAA is

16 considered to be a potentially dangerous, performance-enhancing stimulant in the

17 sports world and, as such, is classified as a banned substance by MLB, WADA and

18 the United States Anti-Doping Agency ("USADA").  *See, e.g.,* Ex. 19 (WADA 2011

19 Prohibited Substances List).  Numerous athletes in various sports throughout the

20 world have been suspended or disqualified for unknowingly using products

21 containing DMAA.  However, despite having knowledge of these facts, Defendants

22 have never specifically warned consumers that DMAA is actually banned by certain

23 sports organizations, as well as being completely banned in Canada and New

24 Zealand, and could cause users to fail drug tests.

25      47.   Defendants not only promise consumers that the Products are safe, they

26 also assure consumers the Products are effective and can produce amazing results.

27 Defendants promise these results knowing that none of the Products, nor any of the

28 Products' individual ingredients at the levels contained therein, can produce these

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  promised results.  Plaintiff is informed and believes, and on that basis alleges, that

2  any existing efficacy studies are on individual ingredients contained within the

3  Products, and none of these studies are on healthy humans with equivalent dosing or

4  routes of administration.  Therefore, such claims are purely false advertising to

5  induce consumers to spend their hard earned money on unproven Products solely for

6  the Defendants' monetary gain.

7      48.    Despite knowing the Products contain DMAA, a synthetic, banned and

8  potentially dangerous stimulant, and that the Products are ineffective for their

9  intended use, Defendants continue to, among other things:

10     (a)    Fail to inform consumers that DMAA does not meet the

11            definition of a "dietary ingredient," and that the Products do not

12            meet the definition of a "dietary supplement," as those terms

13            have been defined and adopted by California's Sherman Law;

14     (b)    Fail to warn consumers about the extreme health dangers and

15            potential side effects of the Products;

16     (c)    Knowingly withhold from consumers material information

17            regarding the DMAA contained in the Products, including but

18            not limited to the fact that DMAA is banned by WADA,

19            USADA and MLB, and banned completely in Canada and New

20            Zealand; and,

21     (d)    Falsely advertise the Products as having specific muscle-building

22            and fat-burning properties that the Products do not have.

23     49.    The labeling for the Products displays the disclaimer that the statements

24  made on the labeling "have not been evaluated by the [FDA]."  In this action,

25  Plaintiff does not sue to subject Defendants to the FDA pre-market approval or post-

26  market regulatory processes, but rather, to stop the false, deceptive, and often illegal

27  labeling and advertising of the Products under California law as described herein.

28

1017590.1

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

## PLAINTIFF'S EXPERIENCE WITH THE PRODUCTS

50.   In and around June, 2011, Plaintiff purchased one container of Hemo Rage Black Ultra Concentrate and one bottle of Lipo 6 Black Hers Ultra Concentrate, for a total price of $130.00, on-line from the bodybuilding.com website.  Prior to purchasing these two Products, Plaintiff reviewed the depictions of the product packaging on that website and read the labeling statements which claim: the Products are "dietary supplements;" that Hemo Rage Black Ultra Concentrate is an effective "pre-work-out detonator," and all the user needs is "one scoop; and that Lipo 6 Black Hers Ultra Concentrate is a "fat destroyer . . . with receptor reprogramming monoterpenes," and the user needs "one pill only."  At the time Plaintiff purchased these Products, he was not aware, and the Product packaging did not inform him, that DMAA is a potentially dangerous, synthetic stimulant banned by WADA, USADA and MLB, that DMAA is banned totally in Canada and New Zealand, that DMAA does not fit within the definition of a "dietary ingredient" and the Products do not fit within the definition of a "dietary supplement" as those terms have been defined and adopted by California's Sherman Law, that DMAA was once marketed as a the drug Forthane, that using DMAA can cause serious side effects, that the labeling and/or internet advertising for the Products make structure/function claims without adequate scientific substantiation or adequate labeling explanation. or that using DMAA could cause him to test positive for a banned substance or for use of amphetamines.  Plaintiff used Hemo Rage Black Ultra Concentrate, and his girlfriend used Lipo 6 Black Hers Ultra Concentrate, without knowing any of the aforementioned facts.

51.   Furthermore, in purchasing the Products, Plaintiff relied on the representations made by Defendants on the labeling and packaging for the Products. Plaintiff reasonably believed and relied on Defendants' representations that the Products are safe and effective dietary supplements which can be legally sold over-the-counter.  Plaintiff and his girlfriend used the Products in accordance with the

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  labeling instructions.  They used the Products as directed for approximately a month

2  and a half, but both Plaintiff and his girlfriend experienced severe adverse side

3  effects, including feeling jittery and anxious when using the Products, having a

4  racing pulse rate and fast heart beat, and feeling exhausted when not using the

5  Products.  Given these serious side effects, the Products did not work for Plaintiff

6  and his girlfriend as they expected, nor as promised by Defendants' labeling

7  representations.  Furthermore, Plaintiff would have never purchased or used the

8  Products, or allowed his girlfriend to use the Products, had he known the Products

9  are not safe, natural and effective dietary supplements as they are advertised to be,

10  but in fact are ineffective and contain DMAA, a banned and extremely dangerous

11  synthetic stimulant.  Plaintiff has suffered injury in the amount of the money he

12  spent to purchase the Products.

13  ## CLASS ACTION ALLEGATIONS

14      52.   Plaintiff brings this class action for injunctive relief, restitution and other

15  equitable and monetary relief on behalf of the putative class (the "Class") consisting

16  of:

17  **All persons residing in California who purchased the**
18  **Products for personal use within four years prior to the**
   **date the Complaint in this action was filed through the**
19  **present (the "Class Period").**

20      53.   Excluded from the Class are governmental entities, Defendants, any

21  entity in which Defendants have a controlling interest, and Defendants' officers,

22  directors, affiliates, legal representatives, employees, co-conspirators, successors,

23  subsidiaries, and assigns.  Also excluded from the Class are any judge, justice, or

24  judicial officer presiding over this matter and the members of their immediate

25  families and judicial staff.

26      54.   The proposed Class is so numerous that individual joinder of all its

27  members is impracticable.  Due to the nature of the trade and commerce involved,

28  however, Plaintiff believes that the total number of Class members is, at a minimum,

1017590.1

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

in the hundreds.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

55.   There is a well-defined community of interest in the questions of law and fact underlying the claims of each member of the Class, and these common questions predominate over any questions that may affect individual Class members. The Common questions of fact and law include, but are not limited to, the following:

(a)   Whether Defendants fail to disclose to consumers that DMAA is a synthetic substance which does not fall within the definition of a "dietary ingredient," and thus the Products do not fall within the definition of a "dietary supplement," as those terms have been defined and adopted by California's Sherman Law;

(b)   Whether Defendants fail to disclose to consumers that DMAA is a potentially dangerous stimulant which is banned by several sports organizations, including MLB, WADA and USADA, and completely banned in Canada and New Zealand;

(c)   Whether Defendants fail to disclose to consumers the potential adverse side effects associated with using Products containing DMAA;

(d)   Whether Defendants fail to disclose to consumers that DMAA was previously sold as the drug Forthane and thus does not fall within the definition of a "dietary ingredient," and the Products do not fall within the definition of a "dietary supplement," as those terms have been defined and adopted by California's Sherman Law;

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

(e)    Whether Defendants fail to disclose to consumers that the labeling and internet advertising for the Products contain structure/function claims which are not adequately explained and for which Defendants do not have adequate scientific substantiation, and thus the Products do not fall within the definition of a "dietary supplement" as that term have been defined and adopted by California's Sherman Law;

(f)    Whether Defendants make false, misleading, deceptive and/or illegal safety and efficacy omissions and representations on the Product labeling and in internet advertising for the Products;

(g)    Whether the Product claims and omissions herein alleged are false, misleading, deceptive, illegal, material and/or reasonably likely to deceive consumers;

(h)    Whether Defendants' conduct is fraudulent and/or violates public policy;

(i)    Whether Defendants have engaged in unfair, unlawful and/or fraudulent business practices in labeling, advertising, marketing and distributing the Products;

(j)    Whether the Products are mislabeled in violation of California's Sherman Law;

(k)    Whether Defendants unlawfully sold the Products containing a dangerous stimulant to consumers in violation of the California Uniform Controlled Substances Act (California Health & Safety Code § 11000 et seq.);

(l)    Whether Defendants engaged in conduct in violation of the CLRA;

(m)    Whether Defendants engaged in false advertising with respect to the Products in violation of the FAL;

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

(n)   Whether Defendants engaged in unfair, unlawful, and/or fraudulent business practices in labeling, marketing and distributing the Products in violation of the UCL;

(o)   Whether Defendants knowingly concealed material facts for the purpose of inducing unwary consumers into spending money on the Products;

(p)   Whether Defendants' representations, concealments and non-disclosures concerning the Products are likely to deceive consumers;

(q)   Whether Defendants' labeling for the Products is false, misleading, illegal and/or deceptive;

(r)   Whether Defendants' internet advertising for the Products is false, misleading, illegal and/or deceptive;

(s)   Whether Defendants represent to consumers that the Products have characteristics, uses, benefits or qualities that the Products do not have;

(t)   Whether Defendants knew or should have known that the Products do not have the characteristics, uses, benefits or qualities for which Defendants advertised and/or labeled the Products;

(u)   Whether Defendants violated California Heath & Safety Code §110760 by manufacturing, selling, delivering, holding, or offering for sale the Products in a manner that constitutes misbranding;

(v)   Whether Defendants continued to sell the Products after knowing the preceding facts;

(w)   Whether Defendants breached express and implied warranties as a result of their misrepresentations in selling the Products;

(x)   Whether Defendants have been unjustly enriched;

(y)   The nature and extent of damages and other remedies to which the conduct of Defendants entitle the members of the Class, and/or which should be assessed against Defendants.

(z)   Whether Plaintiff and the Class are entitled to injunctive relief; and,

(aa)   Whether Plaintiff and the Class are entitled to restitution..

56.   Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendants' common course of conduct since they were exposed to the omissions and misrepresentations in the labeling and/or internet advertising for the Products, and those omissions and misrepresentations were material to their decision to purchase the Products.

57.   Plaintiff will fairly and adequately represent and protect the interests of the Class in that he is a typical purchaser of the Products.  Plaintiff has retained counsel with substantial experience in handling complex class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class.  Plaintiff has retained a firm which is widely recognized as among the most successful and effective class action litigation firms in California.

58.   Plaintiff and the members of the Class have suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the class is impracticable.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties and the court system to resolve the controversies engendered by Defendants' common course of conduct.  The class action device allows a single

1   court to provide the benefits of unitary adjudication, judicial economy, and the fair

2   and efficient handling of all Class members' claims in a single forum.  The conduct

3   of this action as a class action conserves the resources of the parties and of the

4   judicial system and protects the rights of the Class members.  Furthermore, for

5   many, if not most, a class action is the only feasible mechanism that allows an

6   opportunity for legal redress and justice.

7        59.   Adjudication of individual Class members' claims with respect to the

8   Defendants would, as a practical matter, be dispositive of the interests of other Class

9   members not parties to the adjudication, and could substantially impair or impede

10   the ability of other class members to protect their interests.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF CONSUMER LEGAL REMEDIES ACT

### (California Civil Code § 1750, *et seq.*)

### (On Behalf of Plaintiff and the Class Against All Defendants)

16        60.   Plaintiff incorporates by reference all the above allegations as if fully set

17   forth herein.

18        61.   Plaintiff and members of the putative Class are individuals who have

19   purchased the Products for personal use.  This cause of action is being asserted on

20   behalf of Plaintiff and  putative Class members who purchased the Products within

21   the applicable statute of limitations period for this claim.

22        62.   Plaintiff has standing to pursue this claim as he has suffered injury in

23   fact and has lost money or property as a result of Defendants' actions as set forth

24   herein.  Specifically, prior to the filing of this action, Plaintiff purchased the

25   Products for his personal use and the personal use of his girlfriend.  In so doing, he

26   reviewed, believed, and relied upon the marketing omissions and claims on the

27   Product packaging and in internet advertising.  He and his girlfriend consumed the

28   Products as directed, but the Products did not work as advertised.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

63.   Defendants have represented that the Products have characteristics, uses, benefits or qualities that the Products do not have, and have failed to disclose the true characteristics and qualities of the Products.  The policies, acts, and practices heretofore described were intended to result in the sale of the Products to the consuming public, particularly consumers seeking to rapidly build muscle strength or manage their weight, and thus Defendants have violated, and continue to violate, California Civil Code § 1770, including but not necessarily limited to Sections 1770(a)(5), 1770(a)(7) and 1770(a)(9) of the Civil Code, by misrepresenting that the Products are of a particular standard, quality or grade.

64.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injuries in fact and has lost money or property as a result of Defendants' omissions and actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the Products, and he and his girlfriend consumed the Products for their own personal use.  In so doing, Plaintiff reviewed, believed, and relied upon Defendants' false and deceptive labeling and internet advertising claims and omissions regarding the Products.  Plaintiff never would have purchased the Products had he known that the advertised benefits were completely fictitious and that the Products contain a synthetic, dangerous, and banned stimulant.  Unaware of these facts, Plaintiff purchased the Products and he and his girlfriend consumed the Products as directed, but they did not experience the advertised benefits.  Moreover, they experienced serious and severe side effects from use of the Products.

65.   Defendants' practices, omissions, acts and course of conduct in connection with their promotion and sale of the Products, as described hereinabove, are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.  Like Plaintiff, members of the putative Class would not have purchased the Products if Defendants had disclosed the truth and all facts concerning the Products.

66.   Plaintiff and members of the putative Class have been directly and

1017590.1

24
COMPLAINT

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    proximately injured by the conduct of Defendants, and such injury includes payment
2    for the Products.

3        67.    Plaintiff has filed concurrently herewith the declaration of venue
4    required by C.C. § 1780(d).

5        68.    Defendants' wrongful business practices constituted, and constitute, a
6    continuing course of conduct in violation of the CLRA since Defendants are still
7    falsely representing that the Products have characteristics, benefits and uses which
8    they do not have, continue to fail to disclose the true characteristics and qualities of
9    the Products, and thereby have injured and continue to injure Plaintiff and the
10   putative Class.

11       69.    Notice pursuant to C.C. § 1782: As a direct and proximate result of
12   Defendants' violations of law, Plaintiff and the Putative Class have been injured.
13   On September 30, 2011, Plaintiff's counsel mailed to Defendants, by certified mail,
14   return receipt requested, written notice on behalf of plaintiff Stephen J. Rush, as
15   required by C.C. § 1782(a) ("Notice").  The Notice demanded that within thirty (30)
16   days from receipt, Defendants, *inter alia*, adequately correct, repair, replace or
17   otherwise rectify the deceptive practices described in this Complaint for the entire
18   Class, pursuant to C.C. § 1770.  The Notice further demanded that Defendants
19   provide notice and full compensation to consumers who have purchased the
20   Products.

21       70.    Defendants failed to act upon the Notice.  Because Defendants continue
22   to deny the putative Class any remedy, Plaintiffs are informed and believe that
23   Defendants do not intend to provide Plaintiffs and the Class with meaningful relief.
24   As such, pursuant to C.C. § 1782 the Court should award Plaintiff and members of
25   the Class damages.

26       71.    Pursuant to Section 1770 of the California Civil Code, Plaintiff and the
27   Class seek an order of this Court enjoining Defendants from continuing to engage in
28   unlawful, unfair, or deceptive business practices and any other omission or act

1017590.1

25
COMPLAINT

1 prohibited by law, including those set forth in this Complaint.  Plaintiff and the

2 Class also seek an order: (i) enjoining Defendants from failing and refusing to make

3 full restitution of all moneys wrongfully obtained as a result of their violations of the

4 CLRA; (ii) compelling Defendants to disgorge all ill-gotten revenues and/or profits

5 earned or retained as a result of their violations of the CLRA; and (iii) for attorneys'

6 fees and costs.

7      72.   Plaintiff seeks monetary damages for himself and members of the Class,

8 in that they have been damaged by purchasing the Products which they would not

9 have purchased had they known the truth and all facts concerning the Products.

10      73.   The conduct described herein, including but not limited to Defendants'

11 deliberate placement of the Products into the stream of commerce with deceptive

12 and material omissions of information and knowingly false representations for the

13 purpose of misleading customers and causing them to rely on such knowingly

14 deceptive and false omissions and representations in order to induce them to

15 purchase the Products, constitutes malicious and oppressive misconduct which

16 entitles Plaintiff and members of the Class to an award of punitive damages under

17 the CLRA.

18      74.   Plaintiff engaged counsel to prosecute this action and are entitled to

19 recover costs and reasonable attorney's fees according to proof at trial.

20                      **SECOND CLAIM FOR RELIEF**

21            **VIOLATION OF CONSUMER LEGAL REMEDIES ACT**

22                    **(CAL. CIV. CODE § 1750 et seq.)**

23        **(For Violations of Proscribed Practices §1770(a)(5) and (7))**

24     **(On Behalf of the General Public for Injunctive Relief Only Against All**

25                              **Defendants)**

26      75.   Plaintiff incorporates by reference all the above allegations as if fully set

27 forth herein.

28      76.   Plaintiff has standing to pursue this claim as he has suffered injury in

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

fact and has lost money or property as a result of Defendants' actions as set forth herein. Specifically, prior to the filing of this action, Plaintiff purchased Products for his own personal use. In so doing, he reviewed, believed, and relied upon marketing claims and omissions on the Product packaging and in internet advertising. Plaintiff and his girlfriend consumed the Products as directed, but the Products did not work as advertised.

77.   This cause of action is asserted against Defendants by Plaintiff in his individual capacity on behalf of the general public. Plaintiff does not seek certification of this cause of action on behalf of any class.

78.   Plaintiff has been damaged in that he has been subjected by Defendants to deceptive business practices prohibited by California Civil Code §1770(a)(5) and §1770(a)(7), and thus has had his legal rights infringed. He has suffered damage by paying Defendants for Products that do not have characteristics, uses and benefits that the Products' internet advertising and labeling represent, but rather have characteristics and qualities which Defendants fail to disclose, as well as being not of the standard, quality, or grade that the Products' internet advertising and packaging represent.

79.   Defendants have a deceptive and unfair practice of making, and did unfairly make, labeling and internet advertising statements and omissions of fact concerning the Products' characteristics, uses and benefits, as well as the Products' standard, quality, or grade, intended to result in the sale of the Products by Defendants to consumers.

80.   Plaintiff, in addition to the claims sought on behalf of himself and the putative Class herein, also separately and individually seeks solely injunctive relief on behalf of the general public with respect to Defendants' advertising and packaging claims and omissions.

81.   Plaintiff, in his individual capacity, requests that this Court enter a permanent injunction enjoining Defendants, and their agents, servants, employees

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1 and all persons acting under or in concert with them, to cease and desist from

2 making false claims and omissions in the advertising and packaging for the Products

3 concerning the characteristics, uses and benefits, as well as the standards, quality, or

4 grade of the Products.

**THIRD CLAIM FOR RELIEF**

**VIOLATION OF UNFAIR COMPETITION ACT**

**(CAL. BUS. & PROF. CODE § 17200 et seq.)**

**(Fraudulent and Unfair Prongs of the Act)**

**(On Behalf of Plaintiff and the Class against all Defendants)**

10     82.   Plaintiff incorporates by reference all the above allegations as if fully set

11 forth herein.

12     83.   As alleged hereinabove, Plaintiff has standing to pursue this claim as he

13 has suffered injury in fact and has lost money or property as a result of Defendants'

14 actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff

15 purchased the Products for his own personal use.  In so doing, he relied upon the

16 omissions and claims made on the Product packaging and in internet advertising.

17 He and his girlfriend consumed the Products but the Products did not work as

18 advertised.

19     84.   The actions of Defendants, as alleged herein, constitute fraudulent and

20 unfair practices committed in violation of B&P Code § 17200.

21     85.   In labeling and packaging the Products, and in advertising on the

22 internet, Defendants make false and misleading statements concerning the Products,

23 and fail to disclose the true facts.  Moreover, Defendants do not have the requisite

24 competent and reliable scientific substantiation to support the claims about the

25 Products made on Defendants' labeling and packaging and in internet advertising.

26     86.   Defendants' wrongful business practices constituted, and continue to

27 constitute, a continuing course of conduct of fraudulent and unfair competition since

28 Defendants are marketing and selling the Products in a manner likely to deceive the

1017590.1

28

COMPLAINT

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  public.

2      87.   Defendants' fraudulent and unfair business practices have caused

3  economic injury to Plaintiff and the putative Class.

4      88.   Pursuant to B&P Code § 17203, Plaintiff and the putative Class seek an

5  order of this Court enjoining Defendants from making misleading, deceptive and

6  false statements and omissions concerning the Products in their advertising and

7  packaging.  Plaintiff and the putative Class also seek an order requiring Defendants

8  to make full restitution of all moneys they wrongfully obtained from Plaintiff and

9  the putative Class.

10                    **FOURTH CLAIM FOR RELIEF**

11         **VIOLATION OF UNFAIR COMPETITION ACT**

12          **(CAL. BUS. & PROF. CODE § 17200 et seq.)**

13                   **(Unlawful Prong of the Act)**

14  **(On Behalf of Plaintiff and the Class against all Defendants)**

15      89.   Plaintiff incorporates by reference all the above allegations as if fully set

16  forth herein.

17      90.   As alleged hereinabove, Plaintiff has standing to pursue this claim as he

18  has suffered injury in fact and has lost money or property as a result of Defendants'

19  actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff

20  purchased Products for his own personal use. He would not have purchased the

21  Products had he known the Products were being unlawfully sold.  Plaintiff and his

22  girlfriend consumed the Products, but the Products did not work as advertised.

23      91.   The actions of Defendants, as complained herein, constitute unlawful

24  practices committed in violation of B&P Code § 17200.

25      92.   Defendants' wrongful business practices constituted, and continue to

26  constitute, a continuing course of unlawful competition since Defendants are

27  marketing and selling their Products in a manner that violates the CLRA and FAL,

28  as set forth herein.

1017590.1

93.   Defendants' wrongful business practices also violate the Sherman Law. Defendants have unlawfully manufactured, packaged, labeled and/or distributed the Products in violation of the Sherman Law, including but not limited to the following:

(a)   Defendants have disseminated false claims regarding the Products in that the Products' labeling and mass media advertising contain false or misleading statements and/or omissions regarding the true nature of the DMAA in the Products, as well as the efficacy and safety of the Products, in violation of C.C. § 1750 *et seq.*, B&P Code § 17500 *et seq.*, and H&S Code §§ 110290 and 110390 *et seq.*, all of which govern Defendants' conduct;

(b)   The Products are misbranded because the Product labeling does not conform with the requirements for nutrition labeling as set forth in H&S Code §§ 110665 and 110705, which also govern Defendants' conduct.

(c)   The Products are misbranded because the Product labeling does not conform with the requirements for nutrient content and/or health claims as set forth in H&S Code § 110670, which also governs Defendants' conduct; and,

(d)   The Products are unlawfully labeled in violation of H&S Code §§ 110760 and 114089, which also govern Defendants' conduct.

94.   There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

95.   Plaintiff and other putative Class members suffered injury in fact and monetary damage in that they purchased the Products which were being sold unlawfully and illegally during the four years prior to the filing of the Complaint in this action to the present.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

96.    Pursuant to B&P Code § 17203, Plaintiff and the putative Class seek an order of this Court enjoining Defendants from making unlawful and illegal statements and/or omissions concerning the Products in the advertising, labeling and packaging for the Products.  Plaintiff and the putative Class also seek an order requiring Defendants to make full restitution of all moneys they wrongfully obtained from Plaintiff and the putative Class.

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF FALSE ADVERTISING LAW**

**(CAL. BUS. AND PROF. CODE § 17500 *et seq.*)**

**(On Behalf of Plaintiff and the Class against all Defendants)**

97.    Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

98.    This cause of action is being asserted on behalf of Plaintiff and putative Class members who purchased the Products within the applicable statute of limitations period for this claim.

99.    As alleged hereinabove, Plaintiff has standing to pursue this claim as he has suffered injury in fact and has lost money or property as a result of Defendants' actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased Products for his own personal use.  In so doing, Plaintiff relied upon the false and misleading representations and omissions referenced herein.  Plaintiff and his girlfriend consumed the Products, but the Products did not work as advertised.

100.    Defendants made a series of common misrepresentations and omissions on the labeling and packaging for the Products.  These misrepresentations and omissions were made to induce the public to purchase the Products.

101.    Defendants' misleading labeling claims and omissions constituted, and continue to constitute, a continuing course of deceptive advertising since Defendants are still marketing and selling the Products in a manner likely to deceive the public.

102.    In addition, Defendants' advertising and labeling for the Products,

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

giving attention to or giving publicity to the sale of goods or merchandise which are not as represented, constitutes unfair competition, unfair, deceptive, untrue and/or misleading advertising, and an unlawful business practice within the meaning of B&P Code §§ 17531 and 17200, which advertisements and labels have deceived and are likely to deceive the consuming public, in violation of B&P Code § 17500.

103. Defendants were aware, or by the exercise of reasonable care should have been aware, that the representations were untrue or misleading, and the omissions were deceptive and material.

104. Defendants' illegal, false, deceptive and misleading advertisements and labeling statements and omissions regarding the Products have caused injury to Plaintiff and the putative Class.

105. Pursuant to B&P Code § 17535, Plaintiff and members of the putative Class are entitled to remedies as prayed below.

**SIXTH CLAIM FOR RELIEF**

**BREACH OF IMPLIED WARRANTY**

**(CAL. U. COMM. CODE § 2314 and Common Law)**

**(On Behalf of Plaintiff and the Class against all Defendants)**

106. Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

107. This cause of action is being asserted on behalf of Plaintiff and putative Class members who purchased the Products within the applicable statute of limitations period for this claim.

108. The Products were sold with the implied warranty of merchantability in that the Products would pass without objection in the trade, are fit for the ordinary purpose for which they are sold and used, are adequately contained, packaged, and labeled, and conform to the promises or affirmations of fact made on the packaging and labeling. Defendants' Products do not meet the foregoing criteria.

109. The defects in the Products existed prior to the delivery of the Products

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  to Plaintiff and putative Class members.  Plaintiff provided Defendants with notice

2  of his warranty claims, on behalf of himself and putative Class members, by virtue

3  of a notice letter sent to Defendants on September 30, 2011.  Defendants have failed

4  to fulfill their warranty obligations despite said notice.  Plaintiff and putative Class

5  members have incurred damages as described herein as a direct and proximate result

6  of the defective Products and Defendants' breach of the implied warranty of

7  merchantability, in that Plaintiff and the putative Class have paid the purchase price

8  for the defective Products.  Plaintiff, on behalf of himself and putative Class

9  members, has requested that Defendants correct the defects and Defendants have

10  failed to do so.  Plaintiff and putative Class members are entitled to refund of the

11  purchase price paid for the Products, consequential and incidental damages, costs

12  and expenses, including attorney's fees.

SEVENTH CLAIM FOR RELIEF

BREACH OF EXPRESS WARRANTY

(CAL. U. COM. CODE § 2313)

(On Behalf of Plaintiff and the Class against all Defendants)

17  110.  Plaintiff incorporates by reference all the above allegations as if fully set

18  forth herein.

19  111.  This cause of action is being asserted on behalf of Plaintiff and putative

20  Class members who purchased the Products within the applicable statute of

21  limitations period for this claim.

22  112.  The Products were sold with an express warranty, as Defendants made

23  express affirmations of fact and promises that the Products are dietary supplements

24  containing proper dietary ingredients, and regarding the nature, safety and

25  effectiveness of the Products.

26  113.  The Products were sold with an express warranty because Defendants'

27  descriptions of the Products on the labeling and packaging and on Defendants'

28  internet website were intended to become part of the basis of the bargain.  The

1017590.1

33

COMPLAINT