UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| STEPHEN J. RUSH, individually, and on behalf of all others similarly situated. <br><br> Plaintiffs, <br> v. <br> NUTREX RESEARCH, Inc.; JENS O. INGENOHL; and DOES 1-50, inclusive, <br><br> Defendants. <br> _____/ | No. C 12-01060 LB <br><br> ORDER DENYING DEFENDANTS' MOTION TO DISMISS <br><br> [ECF No. 10] |

**I. INTRODUCTION**

In this putative class action, Plaintiff Stephen J. Rush, on behalf of himself and similarly-situated California purchasers of Nutrex's dietary supplements, sues Nutrex and its president Jens O. Ingenohl.[1] Complaint, ECF No. 1.[2] Plaintiff alleges that Nutrex advertised, labeled, and marketed its products as safe and effective dietary supplements when the products in fact were ineffective and contained a dangerous stimulant called DMAA, in violation of several California laws, including the Consumers Legal Remedies Act, the Unfair Competition Act, the False Advertising Law, the Sherman Law, and commercial code provisions pertaining to express and implied warranties. *Id.*

---

[1] Plaintiff voluntarily dismissed former president Jeffrey A. McCarrell under Federal Rule of Civil Procedure 41(a)(1) on June 1, 2012. ECF No. 18.

[2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

Nutrex moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), attacking certain legal theories and factual allegations underlying all of Plaintiff's claims. *See* Motion to Dismiss, ECF No. 10-1. Because Nutrex does not challenge all theories supporting Plaintiff's claims, the court denies the motion to dismiss.[3]

## II. BACKGROUND

### A. Factual Allegations in the Complaint

#### 1. The Defendants and Their Products

Defendants Nutrex Research, Inc. and its controlling principal Jens Ingenohl (together, "Nutrex") manufacture, distribute, and sell a variety of dietary supplements for bodybuilding or weight management (the "Products"). ECF No. 1, ¶ 1. Ingenohl fails to observe corporate formalities with respect to Nutrex Research, Inc., commingles its finances with his own, and acts as its alter ego. *Id.* ¶ 21.

#### 2. Plaintiff's Experience with the Products

In and around June, 2011, Plaintiff Stephen J. Rush, a California resident, purchased two of Nutrex's products – one bottle of Hemo Rage Black Ultra Concentrate and one bottle of Lipo 6 Black Hers Ultra Concentrate – from the website bodybuilding.com for $130.00. *Id.* ¶ 50. Rush reviewed the depictions of the product packaging on bodybuilding.com and read the labeling statements. At the time he purchased the Products, Rush alleges that he relied on Nutrex's claims that the Products were safe and effective dietary supplements that could legally be sold over-the-counter. *Id.* ¶¶ 2, 51.

Rush and his girlfriend used the Products in accordance with the labeling instructions for approximately a month and a half. *Id.* ¶ 51. The Products caused severe side effects including jittery and anxious feelings and a racing pulse, and when they were not using the Products, they felt

---

[3] Rush asks the court to take judicial notice of a journal article and a document containing information from the Food and Drug Administration's website. Opp'n, ECF No. 13 at 10 n.1; Req. for Judicial Notice, ECF No. 16-1. Nutrex opposes the request. Objections to Pls.' Req. for Judicial Notice, ECF No. 17. Nutrex similarly requests the court take judicial notice of a letter from the Food and Drug Administration. Defs.' Req. for Judicial Notice, ECF No. 16-1. Under the circumstances, the court denies both requests and does not consider the documents.

C 12-01060 LB
ORDER                                                2

exhausted. *Id.* Because of the side effects, the Products did not work as Rush and his girlfriend expected, and they stopped using them. *Id.* Rush would not have purchased or used the Products, or allowed his girlfriend to use them, had he known (a) the Products are not the safe, natural, and effective products they were advertised to be and (b) contained DMAA. *Id.*

**3. DMAA**

When Rush purchased the Products, he was not aware that they contained a dangerous stimulant known variously as methylhexaneamine, 1,3 dimethylamylamine, and geranamine ("DMAA"). *Id.* ¶¶ 1, 50-51. DMAA is a dangerous and addictive synthetic stimulant that can cause stroke and death. *Id.* ¶¶ 45-46; *accord id.* ¶ 31. DMAA is entirely banned in Canada and New Zealand and is on the World Anti-Doping Agency and Major League Baseball lists of banned substances. *Id.* ¶ 3. Using DMAA can result in a positive test for use of a banned substance, an illegal substance, and/or amphetamine use. *Id.* ¶¶ 4, 46, 50. Nutrex fails to inform consumers about the extreme health dangers and potential side effects of the drugs. *Id.* ¶ 48(b).

While it is sometimes claimed that DMAA is an extract of geranium oil, the DMAA in the Products is actually a wholly synthetic substance. *Id.* ¶¶ 5-6, 31 (recent studies show that DMAA is not derived from the geranium; all DMAA is synthetic). As such, the DMAA in the products cannot be considered a "dietary ingredient," and the Products are not, therefore, "dietary supplements," as those terms are defined by the federal Food, Drug & Cosmetic Act ("FDCA") and its implementing rules and regulations, which are incorporated into California's Sherman Food, Drug, & Cosmetic Act (the "Sherman Law"), Health & Safety Code §§ 108975-111915. *Id.* ¶¶ 6, 30.

DMAA was originally patented in 1944 by Eli Lilly and marketed as a drug under the name "Forthane," for use as a nasal decongestant and as a treatment for oral tissues. *Id.* ¶¶ 3, 8, 42. Because DMAA was previously marketed as a drug, it cannot be considered a dietary ingredient that can be included in a dietary supplement, but Nutrex failed to inform consumers of any of this. *Id.* ¶¶ 8, 43.

Furthermore, DMAA cannot be considered a dietary ingredient that can be included in a dietary supplement because Nutrex has not complied with applicable regulatory requirements. *Id.* ¶ 44. Any dietary ingredient first marketed in the United States after October 15, 1994 qualifies as a "new

dietary ingredient" under the FDCA. *Id.* A "new dietary ingredient" is not considered a "dietary ingredient" under the FDCA until a manufacturer submits a New Dietary Ingredient Application to the Food and Drug Administration ("FDA"). *Id.* But Nutrex has not submitted a New Dietary Ingredient Application and fails to inform consumers of that fact. *Id.*

**4. Nutrex's Advertising and Marketing**

Nutrex sells the Products under trade names including: Hemo Rage Black, Lipo 6 Black, and Lipo 6 Black Hers, each of which are also sold in a version bearing the label "Ultra Concentrate." *Id.* Nutrex's Product labels make a variety of statements, such as:

- Use of Nutrex Products provides "freakish blood-engorged vascularity, tunnel-vision like mental focus and clarity, coupled with record-shattering strength gains that will help propel your physique to new heights." *Id.* ¶ 33, Ex. 3 (label for Hemo Rage Black Ultra Concentrate).

- Use of Nutrex Products "[i]nduces raging energy, expands blood volume, increases strength, hyper-activates pump effect, detonates fat and provides serious muscle-building compounds all in one." *Id.*

- The Nutrex Products are "the world's first one-pill-only fat destroyer that combines receptor cleansing and reprogramming agents with an ultra concentrated fat destroying complex. . . [And each] cleanses and reprograms receptor sites to support maximum cell to-cell communication. . . [and] hits the fresh receptor with an ultra concentrated fat destroying complex so powerful that all you need is a single pill." *Id.* at 34, Ex. 4 (label for Lipo 6 Black Hers Ultra Concentrate and Lipo 6 Black Ultra Concentrate).

- The Product "Contains the Powerful Thyroid Activator 3.5 Diiodo-L-Thyronine for Hyper-Active Fat Metabolization – Contains 3 Forms of Yohimbine for Maximum Fat-Release in Targeted Trouble Areas – Activates Brown Adipose Tissue by Stacking 3 Heat-Generating Phenylethylamines – Generates Significantly Increased Body Heat (Thermogenesis) to Melt Away Fat Deposits." *Id.* ¶ 35, Ex. 5 (label for Lipo 6 Black).

- Nutrex Products have "2 Powerful Thyronines for Hyper-Active Fat Metabolization –Contains 3 Forms of Yohimbine for Maximum Fat-Release in Targeted Areas – Activates Brown Adipose Tissue by Stacking Powerful Heat-Generating Compounds – Generates Significantly Increased Body Heat to Melt Away Fat Deposits." *Id.*

Rush alleges that these claims constitute false advertising because they falsely promise consumers that the product is safe and effective. *Id.* ¶ 47; *see also id.* ¶ 29 (Nutrex's deceptive marketing campaign claims that they are safe, all natural dietary supplements that can be used as a "pre-workout detonator" or a "weight loss 'fat destroyer'"). But Nutrex knows that the Products and their individual ingredients are not effective, and it falsely claims that the Products have specific muscle-building and fat-burning properties that they do not have. *Id.* ¶¶ 47, 48.

Nutrex markets and advertises the Products as safe, over-the-counter dietary supplements that affect the structure and function of the human body in the same manner as drugs. *Id.* ¶ 32. Nutrex makes these "structure/function" claims through Product labeling and Internet advertising without informing consumers that it lacks adequate scientific substantiation to make the claims. *Id.* In fact, the FDA has often warned manufacturers that make "fat burner" product claims that such claims require scientific substantiation for their products to be considered dietary supplements. *Id.* ¶¶ 38-39.

### B. Federal Jurisdiction and Class Allegations

Rush and the putative class are California residents who purchased Nutrex Products in the four-year period that preceded the complaint. *Id.* ¶¶ 16, 52. Nutrex Research, Inc. is a Florida corporation with its principal place of business in Florida and Defendant Ingenohl is a Florida resident. *Id.* ¶¶ 8, 26. Plaintiff alleges that there is minimal diversity between the parties, the amount in controversy exceeds $5,000,000, and there are hundreds to thousands of putative class members. *Id.* ¶¶ 16-19, 26. Based on these allegations, the court has jurisdiction under 28 U.S.C. § 1332 and the Class Action Fairness Act ("CAFA") of 2005.

### III. LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In this context, "claim" means a set of facts that, if established, entitle the pleader to relief." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*,

550 U.S. at 555 (internal citations omitted). Dismissal is warranted where a claim lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010); *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Alternatively, a claim may be dismissed where it presents a cognizable legal theory yet the complaint fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Shroyer*, 622 F.3d at 1041.

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. See *id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir.1990)).

## IV. DISCUSSION

Nutrex's motion to dismiss does not directly address any of Rush's claims for relief (which is the ordinary way of challenging claims in a complaint). Instead, it identifies certain bases for the claims (generally on a very factual level) and then shoots those bases down individually (as opposed to challenging an entire claim). Using this approach, Nutrex will prevail only if it shows that Rush's claims lack a cognizable legal theory or the complaint fails to plead sufficient facts to support a cognizable legal theory. *See Shroyer*, 622 F.3d at 1041. But if Nutrex has not challenged all theories supporting Rush's claims, then the claims survive, and the court does not need to address Nutrex's arguments on the merits. (Whether a motion to strike under Rule 12(f) would have been a better approach is not before the court. Indeed, the court recognizes that a 12(f) motion to strike would have been difficult here.)

The court begins with a summary of Plaintiff's claims and Nutrex's general (as opposed to claim-by-claim) challenges to the claims. It then turns to a claim-by-claim analysis and ultimately concludes that Nutrex does not challenge all theories supporting Rush's claims. Therefore, its motion to dismiss fails.

## A. <u>Summary of Claims and Challenges</u>

Plaintiff's complaint has eight claims. On a very general level, claims one and two charge violations of the Consumers Legal Remedies Act ("CLRA") and involve Rush's buying of the Products, his reliance on marketing claims, and the fact that the Products were not as Nutrex represented them to be. Claims three and four charge violations of the fraudulent, unfair, and unlawful prongs of California's Unfair Competition Law ("UCL") based on deceptive practices in marketing (including claims about the Products that are not true) and (on the unlawful prong) claims predicated on the CLRA and False Advertising Law (FAL) violations. Claim Five charges false advertising in violation of the FAL based on the same deceptive advertising used to induce purchasers to buy the Products. Claims six and seven involve breach of implied and express warranties in violation of the California Commercial Code based on representations about the products that were not true. Claim eight charges unjust enrichment based on Nutrex's knowing misrepresentations to sell the Products and retain the proceeds. *See* ECF No. 1 ¶¶ 60-122.

More specifically, and again on a high level, Plaintiffs assert different theories in support of the claims:

- Nutrex advertises, labels, markets, and warrants the Products as safe and effective dietary supplements while knowing that the Products are actually unsafe, that they cannot produce the advertised results, that they are not dietary supplements, and that Nutrex's labels violate the Sherman Law. *Id.* ¶¶ 46-48, 50-51.

- Nutrex advertises, labels, and markets the Products as safe and effective, but it fails to inform consumers of numerous material facts, including, among other things: (1) DMAA is included in the Products; (2) DMAA was once marketed as a drug; (3) DMAA is a purely synthetic compound; (4) DMAA is a dangerous central nervous system stimulant which is banned by the World Anti-Doping Agency, Major League Baseball, Canada, and New Zealand; (5) using the Products can cause extreme health dangers and adverse health-related side effects, including death; (6) using the Products can cause consumers to test positive for use of banned or illegal substances, including amphetamine; (7) though DMAA is a New Dietary Ingredient, Nutrex has not submitted a New Dietary Ingredient Application to the FDA; (8) Nutrex lacks substantiation for the "structure/function" claims it makes about the Products; (9) DMAA is not a "dietary ingredient," and the Products are not "dietary supplements" as those terms are defined in applicable legislation; and (10) the Products cannot produce the results claimed. *Id.* ¶¶ 4, 30-48, 50-51.

In contrast, Nutrex identifies the bases for Rush's claims in the following quotation from its motion:

(1) Defendants failed to warn consumers that they should investigate whether ingredients

      may be banned by various sports organizations, even though the exhibits attached to the Complaint show that Nutrex does provide such warnings;

      (2) Defendants failed to warn consumers that the [DMAA] in each product is a drug, as that term is defined in the [FDCA] and, by extension, the [Sherman Law], even though it is not scheduled as a drug by the federal or California state governments;

      (3) each of the Nutrex products listed in the Complaint is a drug because they make so called "structure/function" claims, despite the fact that such claims are permissible for dietary supplements;

      (4) the ingredients in Nutrex's products are impliedly represented to be all natural because they are marketed as dietary supplements, even though dietary supplements are not required to contain solely "natural" ingredients; and

      (5) other claims not relevant to this motion.[4]

ECF No. 10-1 at 6-7. To counter these bases, Nutrex makes the following arguments:

1. It cannot be liable for failure to warn consumers that DMAA may be banned by some sports organizations because the Products bore labels providing such warning. *Id.* at 8-9.

2. Nutrex cannot be liable for failing to warn consumers that DMAA is a drug because (a) it is not a drug, as that term is defined in the FDCA, (b) the fact that DMAA was previously marketed as a drug does not mean that Nutrex is marketing it as such, and (c) Nutrex is not marketing the Products or DMAA as a drug. *Id.* at 9-13.

3. Nutrex does not market the Products as "natural" or "all natural," so it cannot be liable for representing otherwise. *Id.* at 13-15.

4. Rush's claims under the Sherman Law are entirely preempted. *Id.* at 16-21.

5. The primary jurisdiction doctrine supports dismissing Rush's allegations to the extent they involve Nutrex's failure to comply with FDA regulations. *Id.* at 17-21.

6. Rush, like all private plaintiffs, lacks standing to raise unfair competition and false advertising claims on a theory of lack of substantiation. *Id.* at 21-23.

7. Nutrex had no duty to disclose any alleged lack of scientific substantiation for its advertising claims. *Id.* at 23.

    In opposition, Rush argues that Nutrex pretends that he is trying to enforce the Food, Drug, and Cosmetic Act ("FDCA") or FDA regulations (even though Rush said explicitly in the complaint that he is not) and then ignores his primary theory of liability: deceptive and misleading labeling and marketing claims and omissions regarding the safety and effectiveness of the Nutrex Products. ECF

---

    [4] The court observes that on its face, this appears to be an acknowledgment that Rush establishes theories for his claims that Nutrex does not challenge.

C 12-01060 LB
ORDER         8

No. 13 at 18; *see e.g.*, ECF No. 1, ¶ 48(d). And, Rush argues, this theory provides the basis for all of his claims: the CLRA claims (ECF No. 1, ¶¶ 60-81), the UCL claims (*id.* ¶¶ 82-96), the FAL claim (*id.* ¶¶ 97-105), the breach of warranty claims (*id.* ¶¶ 106-16), and the restitution claim (*id.* ¶¶ 117-22). ECF No. 13 at 18-20. As discussed below, Nutrex basically ignores this argument in its reply.

The court examines each claim and, as to each, concludes that Nutrex did not challenge all theories supporting the claims. Thus, Nutrex's motion to dismiss fails.

## B. False Advertising Law (Claim Five)

Given Rush's reliance generally on a false advertising theory, the court begins with claim five, which charges violations of California's False Advertising Law ("FAL"), California Business and Professions Codes sections 17500, *et seq.*

In order to state a false advertising claim, a plaintiff must allege that (1) the statements in the advertising are untrue or misleading, and (2) the defendants knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading. Cal. Bus. and Prof. Code § 17500; *see also National Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1342 (2003). Private plaintiffs are authorized to bring civil actions to enjoin and seek restitution from false advertisers under California Business and Professions Code section 17535.

In its reply, Nutrex makes three arguments that Rush's false advertising claim should be dismissed: (1) it relies on "his unsupported claim that the Products are not dietary supplements," (2) it hinges on "the disclosure of facts Nutrex has no duty to disclose;" and (3) it rests on a theory that Nutrex lacks scientific substantiation for its claims. *See* ECF No. 16 at 3-7; *see also* ECF No. 10-1 at 21-23.

More specifically as to the first argument, Nutrex argues that Rush's false advertising claim should be dismissed because it "spring[s] from his belief" that dietary supplements cannot contain synthetic ingredients. ECF No. 16 at 2. Also to the extent Rush argues that the Products are not dietary supplements because they make "structure/function claims" and are marketed as drugs, Rush's argument really is not about false advertising but instead is about enforcing his own "idiosyncratic interpretation of the FDCA and FDA regulations," *Id.* at 4-5.

As to the second argument about duty to disclose, Nutrex argues that it has no "duty to disclose the decisions of specific sports organizations or other jurisdictions regarding DMAA" and did make clear that some ingredients might be banned. *Id.* at 7-8. Nutrex also say conclusorily that "Plaintiff's opposition does not provide any meaningful support for his claims that Nutrex makes unauthorized nutrient content claims other than insisting that [FDA] regulations address the term 'ultra concentrate,' when they plainly do not." *Id.* at 8.

Rush's claims do not hinge on these narrow theories.[5] Among other things, Rush alleges that Nutrex's advertisements are untrue and misleading because they claim that the Products have specific muscle-building and fat-burning properties that they do not have and that Nutrex knew otherwise. *See, e.g.*, ECF No. 1, ¶¶ 29, 47, 48; *see infra* at 4-5 (summarizing Rush's advertising and marketing allegations). Rush filed several examples of the allegedly false advertisements as attachments to his complaint. *Id.* at Exs. 3-5. He also pleads that the products are ineffective and unsafe and bolsters his allegations that the Products are unsafe (because they contain DMAA) by attaching to the complaint FDA consumer warnings, letters, and articles discussing the fact that supplements containing DMAA are unhealthy and often falsely labeled and that DMAA is abused as a drug. *See Id.* at Exs. 1, 2, 16-18. Nutrex does not address this theory (other than the narrow attacks on the allegations described previously) or the facts supporting it. Accordingly, the court denies Nutrex's motion to dismiss the FAL claim.

## C. Consumers Legal Remedies Act Claims (Claims One and Two)

Plaintiff's first and second claims allege violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* The CLRA prohibits certain unfair or deceptive acts "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. Rush alleges that Nutrex violated

---

[5] Nutrex perhaps recognizes this in its Reply, where it states that "[e]ven if plaintiff is able to establish that he has ordinary claims for false advertising that do not rely on [the synthetic ingredient or duty to disclose theories], then the Court should still take this opportunity to narrow this case by dismissing claims that turn on plaintiff's unsupported positions." ECF No. 16 at 3. But Nutrex raises challenges only to allegations, and that approach is appropriate with a motion to strike under Federal Rule of Civil Procedure 12(f), not a motion to dismiss under Rule 12(b)(6). *See infra.*

several CLRA provisions, including those that prohibit:

> Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> Advertising goods or services with intent not to sell them as advertised.

Cal. Civ. Code § 1770(a) (5), (7), (9). Rush's allegations about deceptive advertising – discussed in the previous section and summarized in the Background section – also support his CLRA claims. Boiled down and in the context of this claim, they are that in order to sell the Products, Nutrex advertises them as safe and effective, when it knows that in reality they contain DMAA and are ineffective. *See, e.g.,* ECF No. 1, ¶ 48. Nutrex does not challenge this, and thus the court denies the motion to dismiss the CLRA claims.

### D. Unfair Competition Act Claims (Claims Three and Four)

Rush's third and fourth claims for relief allege violations of California Business and Professions Code § 17200, also known as California's "Unfair Competition Law" ("UCL"). The UCL prohibits "any unlawful, unfair or fraudulent business act and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Since section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition. The statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'" *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Rush asserts claims under each of the three theories. "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-135 (2007).

#### 1. Unlawful Business Practices

Rush alleges that Nutrex engaged in unlawful conduct by violating the CLRA, the False Advertising Law, and the Sherman Law. ECF No. 1, ¶¶ 92-93. "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or

municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). Thus, an unlawful business practices claim under section 17200 "borrows violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq." *Id.* (quotation omitted). Accordingly, a defendant "cannot be liable under § 17200 for committing unlawful business practices without having violated another law." *Ingles v. Westwood One Broadcasting, Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005).

As discussed, Rush alleges that Nutrex violated the False Advertising Law, which is a predicate offense for this UCL claim. ECF No. 1, ¶ 92. Because the court denied Nutrex's motion to dismiss Rush's False Advertising Law claim, Rush sufficiently alleges that Nutrex is liable for an unlawful business practice.

**2. Fraudulent and Unfair Business Practices**

Rush also alleges violations under the UCL's "fraudulent" and "unfair" prongs. A business act is "unfair" under the UCL "if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Linear Tech. Corp.* 152 Cal. App. 4th at 134. A business practice is fraudulent under § 17200 if it is "one which is likely to deceive the public," and "may be based on misrepresentations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *Id.*; *see McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006). UCL claims based on fraudulent conduct are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009). To state a claim under the "fraudulent prong" of the UCL, a plaintiff must allege specific representations made by the defendant, the extent to which the plaintiff relied upon the representations, and that the representations were false, misleading, or otherwise fraudulent. *See In re Actimmune Marketing Litigation,* 614 F. Supp. 2d 1037, 1052 (N.D. Cal. 2009).

Again, Rush alleges that Nutrex made specific "unfair and misleading" statements and violated the False Advertising Law. The allegations – again unchallenged by Nutrex except on the narrow grounds discussed previously – also support the UCL claim, and so Nutrex's motion to dismiss the UCL claims fails.

### E. Breach of Implied Warranty Claim (Claim Six)

Rush alleges that Nutrex breached the warranty of merchantability that is implied in certain types of contracts. Under California Commercial Code section 2314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale." The California Supreme Court has explained that merchantability has several meanings, two of which are relevant to the instant case: "the product must '[conform] to the promises or affirmations of fact made on the container or label,' and must be 'fit for the ordinary purposes for which such goods are used.'" *Hauter v. Zogarts,* 14 Cal. 3d 104, 118 (1975) (citing Cal. Com. Code § 2315(2)(c), (f)).

Again, Nutrex does not challenge all of the false advertising (through labeling) allegations and makes no other challenges to this claim. Its motion to dismiss thus fails.

### F. Breach of Express Warranty (Claim Seven)

Rush alleges that Nutrex breached an express warranty based on its "express affirmations of fact and promises that the Products are dietary supplements containing proper dietary ingredients, and regarding the nature, safety and effectiveness of the Products." ECF No. 1, ¶ 112.

California Commercial Code section 2313 provides that an express warranty is created by: "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise"; and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Comm. Code § 2313.

"In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986). Again, Nutrex does not challenge all of the false advertising (through labeling) allegations and makes no other challenges to this claim. Its motion to dismiss thus fails.

### G. Unjust Enrichment / Restitution (Claim Eight)

Rush alleges that Nutrex is liable for unjust enrichment or restitution damages. This allegation, too, is premised on the false advertising theory. *See* ECF No. 1, ¶ 117 (incorporating by reference

1 all previous allegations).

2 In order to establish a claim for unjust enrichment, a plaintiff must plead "receipt of a benefit and
3 unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th
4 723, 726 (2000). Furthermore, the plaintiff must demonstrate that the defendant received the benefit
5 through mistake, fraud, coercion or request. *Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*, 205
6 Cal. App. 3d 1415, 1422 (1988).

7 Here, Rush alleges that Nutrex sold the Products to the class members based on the deceptive
8 misrepresentations summarized previously, and then it kept and retained the money that Class
9 Members paid. ECF No. 1, ¶¶ 117-22. Again, Nutrex's only challenges are its narrow (and
10 insufficient) challenges to the false advertising theory. Its motion to dismiss fails.

11 **H. Other Arguments Raised**

12 The court's analysis here is sufficient. Nutrex's motion to dismiss fails because it does not
13 challenge all theories supporting Rush's claims. *See Shroyer*, 622 F.3d at 1041. Thus, the court
14 need not address Nutrex's theory-based (or sometimes fact-based) challenges.

15 Still, the court makes some high-level observations about Nutrex's arguments, which themselves
16 are high level and general. Rush represented specifically in his complaint that he was not suing
17 under the FDCA or doing anything other than availing himself of consumer protections available
18 under California law. ECF No. 1, ¶ 49. In its motion, Nutrex either sets up narrow challenges (*e.g.*,
19 narrowly characterizing claims as being about failure to warn about sports organization bans or
20 about DMAA's being a drug) or argues legal concepts like preemption and primary jurisdiction on a
21 very high level with modest analysis. *See* ECF No. 10-1 at 9 (sports organizations), 12 (drug
22 argument), 15-17, 20-21 (preemption and primary jurisdiction). In its opposition, Plaintiff
23 responded robustly, arguing first that its claims were predicated on false advertising and labeling and
24 describing next how the FDCA does not preempt state consumer protection laws that do not expand
25 the remedies available under the FDCA. ECF No. 13 at 17-25. In its reply, Nutrex ignored the
26 preemption argument entirely (except for three lines on primary jurisdiction) and made only a
27 narrow factual attack on the otherwise robust false labeling/advertising theory. ECF No. 16 at 4-9.
28 At oral argument, the court made these observations and asked whether – given Nutrex's

challenge only to some allegations, and not to all cognizable theories underlying the claims – Nutrex's motion was intended to educate the court about legal issues that might arise. Nutrex did not really dispute this characterization. In any event, the court concludes that Nutrex did not attack the "false advertising/deceptive practices" theory that supports all claims. Thus, its motion to dismiss fails.

## V. CONCLUSION

Nutrex's motion to dismiss is DENIED. This disposes of ECF No. 10.

**IT IS SO ORDERED.**

Dated: June 13, 2012

_____
LAUREL BEELER
United States Magistrate Judge